1

2                   UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4

5

6   LYNN GAVIN,

7           Plaintiff,                      No. C 13-0056 PJH

8       v.                                  **ORDER GRANTING MOTION TO
                                            DISMISS**
9   JOHN ARNTZ, et al.

10          Defendants.
    _____/
11

12          The motion of defendants City and County of San Francisco, its Board of

13   Supervisors, former Supervisor Sean Elsbernd, the Office of the Mayor of San Francisco,

14   Mayor Edwin Mah Lee, the San Francisco Department of Elections, Elections Commission

15   and the Director of Elections John Arntz (together "City defendants") to dismiss plaintiff

16   Lynn Gavin's ("Gavin") claims against them came on for hearing before this court on July

17   24, 2013.  The City defendants appeared through their counsel Wayne Snodgrass.

18   Plaintiff, who is proceeding in pro per, did not appear at the hearing.  Having carefully

19   reviewed the parties' papers and considered their arguments and the relevant legal

20   authority, and good cause appearing, the court hereby GRANTS the City defendants'

21   motion to dismiss as follows.

22                              **BACKGROUND**

23          On January 4, 2013, plaintiff filed a complaint in this court, asserting twelve causes

24   of action against the City defendants, as well as against Parkmerced Investors Properties,

25   LLC ("Parkmerced"), Seth Mallen and Bert Polacci (together "Parkmerced defendants").

26   Plaintiff's claims are for (1) declaratory relief, (2) injunctive relief, (3) fraud, (4) negligence,

27   (5) defamation of character, (6) false claims, (7) nuisance, (8) unconscionability, (9) civil

28   R.I.C.O., (10) deprivation of civil rights, (11) accounting and (12) interpleader.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

A.     Factual Background

Plaintiff's complaint is not clear as to the exact conduct that supports each cause of action.  Nor does plaintiff attribute any of the alleged wrongful acts or omissions to specific defendants.  However, the allegations seem to separate into three major categories:  (1) events related to the denial of plaintiff's request for disability accommodations at her residence and subsequent unlawful detainer case, which pertain to the Parkmerced defendants; (2) conduct by various San Francisco officials and agencies, including the San Francisco Municipal Transportation Agency's ("SFMTA") denial of plaintiff's request for a handicapped parking space designation near her home and the San Francisco Sheriff's eviction of plaintiff; and (3) allegations against the City and its election officials concerning plaintiff's unsuccessful race for Supervisor in San Francisco's District 7.

Starting with category (1), on March 1, 2010, plaintiff entered into a lease with Parkmerced.  Complaint, ¶ 7.  Plaintiff alleges that sometime during the lease term, prompted by her medical condition, she requested that Parkmerced install grab bars in her bathroom, a reasonable accommodation that Parkmerced refused to make.  Id., ¶ 32. Plaintiff asserts that this refusal constitutes discrimination against her as a person with disabilities.  Id., ¶ 33.  On August 24, 2011, and again on September 19, 2011, plaintiff received three-day notices to perform covenant or quit for non-payment of utilities, which she insists were "fraudulently issued" in retaliation against her, because she "is a disabled person who asserts her rights."  Id., ¶¶ 68-70, 74.  Eventually, Parkmerced filed an unlawful detainer claim in San Francisco Superior Court, and on July 2, 2012, obtained a default judgment against plaintiff.  Id., ¶ 99.  On July 10, 2012, plaintiff filed an ex parte request to set aside the default judgment, which the court denied on July 17, 2012, only staying the judgment until July 25, 2012.  Id., ¶ 110.  Plaintiff alleges that the Superior Court's ruling was "wrongful" and that it violates her right to a jury trial.  Id., ¶ 111.  On July 25, 2012, plaintiff was evicted by the San Francisco Sheriff's Department.  Id., ¶ 118.

As to category (2), plaintiff also had interactions with several San Francisco

United States District Court

For the Northern District of California

1   agencies during the course of the above-mentioned events.  Plaintiff alleges that she

2   contacted the SFMTA, requesting the designation of a handicapped parking spot near her

3   home, but that the agency denied her request via a letter sent on August 18, 2011.  Id., ¶¶

4   62-63.  Plaintiff also mentions several hearings and findings of the Sunshine Task Force

5   between August 2011 and April 2012, but does not elaborate about the nature or subject

6   matter of these events.  Id., ¶¶ 64-66, 73, 76, 85.  Plaintiff alleges that she filed complaints

7   against several City Supervisors, the City Attorney and various other officials, and that the

8   Sunshine Task Force held hearings and made findings, but offers no specifics.  Id.

9   Additionally, plaintiff represents that she received a verification from the San Francisco

10   Human Rights Commission ("SFHRC") that she has an "open complaint against

11   [d]efendants," but does not describe the basis for the complaint.  Id., ¶ 105.  Plaintiff also

12   alleges that another city agency, the San Francisco Housing Authority ("SFHA"), has on

13   record plaintiff's statement to the SFHA inspector that Parkmerced "would not pay for grab

14   bars."  Id., ¶ 83.

15        Turning to category (3), on August 10, 2012, plaintiff declared her candidacy for

16   District 7 Supervisor on the San Francisco Board of Supervisors.  Id. ¶ 123.  Plaintiff voted

17   for herself in the November 6, 2012 election.  Id., ¶¶ 125-26.  Plaintiff alleges that during

18   the vote counting on November 7, 2013, there was a power outage at the San Francisco

19   City Hall, and that a "false fire alarm" was triggered.  Id., ¶ 128.  Plaintiff asserts that she

20   "does not know what occurred to the vote she cast for herself in the [e]lection after she cast

21   her vote."  Id., ¶ 130.  Norman Yee was declared the winner of the District 7 Supervisor

22   seat, while plaintiff placed eighth out of nine candidates.  Id. ¶ 136; Id. Ex. 2.

23   Subsequently, plaintiff obtained three election reports: (1) the Final Certified Summary

24   Report issued by the City Department of Elections, which indicates that plaintiff received

25   716 votes out of 31,334; (2) a tally published on the website westideobserver.com, showing

26   that she received 719 out of 31,385 votes; and (3) a report posted on the website

27   wikipedia.org, which states that plaintiff won 716 of the 31,351 total votes, and 719 "ranked-

28

United States District Court
For the Northern District of California

1  choice" votes.[1]  Id. ¶¶ 136-40; see also id. Ex. 3; id. Ex. 4.  Plaintiff asserts that she was

2  deprived of her right to vote, as well as of the right to have her vote "counted equally with

3  the vote of any other person who voted in the election," because she does not know what

4  happened to the vote she cast, and because "[d]efendants may have discarded" her vote,

5  "thereby minimizing or potentially canceling out her ability to elect herself in the [e]lection."

6  Id., ¶¶ 130-34.  Although it is not entirely clear in the complaint, these allegations seem to

7  be proffered as support for plaintiff's deprivation of civil rights claim against the City

8  defendants.

9  B.      Procedural Background

10        Along with her complaint, on January 4, 2013, plaintiff filed an application to proceed

11  in forma pauperis ("IFP") and an application for a temporary restraining order ("TRO")

12  enjoining the swearing in of Norman Yee as the representative of District 7 on the San

13  Francisco Board of Supervisors.  Dkt. 3.  Plaintiff's IFP application was granted on January

14  7, 2013.  Dkt. 5.  The court held a hearing on the TRO application on January 8, 2013, and

15  the request was denied, based on the lack of factual allegations supporting plaintiff's

16  claims.  Dkt. 11.  The court then scheduled a case management conference ("CMC"),

17  which was continued at plaintiff's request to May 30, 2013.  Plaintiff did not file a case

18  management statement, and did not appear at the CMC.  However, counsel for the

19  Parkmerced defendants did appear, and informed the court that plaintiff's complaint in this

20  case may be duplicative of a previous action filed by plaintiff in this court.  See

21  Gavin v. Parkmerced, No. 12-5864 RS (N.D. Cal. 2013) (filed Nov. 25, 2012; and dismissed

22  Apr. 29, 2013).  Accordingly, the court ordered plaintiff to show cause why the case should

23

24        [1] Ranked-choice voting, which allows voters to rank up to three candidates for a single
office, is used to elect the City's Board of Supervisors. Ballots are initially distributed based on
25  each elector's first preference. If a candidate secures more than half of votes cast, that
candidate wins. Otherwise, the candidate with the fewest votes is eliminated, and the votes in
26  his or her favor are recounted and assigned to the remaining candidates based on the voter's
next preference. This process continues until one candidate wins by obtaining more than half
27  the   votes.   City   and   County   of   San   Francisco   Department   of   Elections,
http://www.sfgov2.org/index.aspx?page=876 (last visited July 18, 2013).

28

4

United States District Court

For the Northern District of California

1  not be dismissed for failure to prosecute pursuant to Fed. R. Civ. P. 41, and to show that

2  the instant case involves issues that were not already litigated in her previous suit against

3  the Parkmerced defendants. Dkt. 17.  A hearing on the matter was scheduled for June 27,

4  2013.  Plaintiff also filed a motion to change venue to San Francisco, which the court

5  decided to include as part of the June 27 hearing.

6        On June 24, 2013, the Parkmerced defendants filed a response to the order to show

7  cause ("OSC"), explaining that the current claims against them (i.e., the claims arising out

8  of category (1) above) are identical to the ones previously dismissed with prejudice by the

9  Hon. Richard Seeborg in Gavin v. Parkmerced.  Plaintiff did not file a response to the

10  Parkmerced defendants' OSC response, and did not appear at the June 27, 2013 hearing

11  as ordered.  After the hearing, the court agreed with the Parkmerced defendants that

12  plaintiff's claims against them are barred as duplicative, and dismissed with prejudice all

13  claims pertaining to the Parkmerced defendants.  Dkt. 30.  Because plaintiff did not appear

14  at the hearing, the court also denied her motion for change of venue.  Id.  Additionally, the

15  court noted in a written order that the City defendants had filed the instant motion to

16  dismiss for (1) failure to state a claim, and (2) failure to comply with the California Tort

17  Claims Act[2], and that a hearing on that motion would be held on July 24, 2013.  The court

18  stated that plaintiff's appearance at the July 24 hearing was mandatory, and that plaintiff's

19  non-compliance with the order would constitute grounds for dismissal for failure to

20  prosecute.

21        Plaintiff did not file an opposition to the City defendants' motion to dismiss.  Plaintiff

22  also did not appear at the hearing scheduled for 9:00am on July 24, 2013, despite the

23  court's warning that her non-appearance would warrant dismissal for failure to prosecute.

24  Instead, at 11:43 am on July 24, 2013, Gavin filed a request with the San Francisco clerk's

25  office to continue the hearing to August 8, 2013.

26

27       [2] The California Tort Claims Act is referred to as the California Government Claims Act
28  in the City defendants' motion to dismiss.

**United States District Court**
For the Northern District of California

1

**DISCUSSION**

2    A.    Legal Standards

3         1.    Motion to Dismiss Pursuant to Rule 12(b)(6)

4         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

5    sufficiency of the claims alleged in the complaint. <u>Ileto v. Glock, Inc.</u>, 349 F.3d 1191,

6    1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint. <u>Allarcom</u>

7    <u>Pay Television, Ltd. v. Gen. Instrument Corp.</u>, 69 F.3d 381, 385 (9th Cir. 1995).  To survive

8    a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the

9    minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires

10   that a complaint include a "short and plain statement of the claim showing that the pleader

11   is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

12        A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

13   plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

14   a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

15   1990).  The court is to "accept all factual allegations in the complaint as true and construe

16   the pleadings in the light most favorable to the nonmoving party." <u>Outdoor Media Group,</u>

17   <u>Inc. v. City of Beaumont</u>, 506 F.3d 895, 899-900 (9th Cir. 2007).

18        However, legally conclusory statements, not supported by actual factual allegations,

19   need not be accepted. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009).  The allegations in

20   the complaint "must be enough to raise a right to relief above the speculative level." <u>Bell</u>

21   <u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations and quotations omitted).  A

22   claim has facial plausibility when the plaintiff pleads factual content that allows the court to

23   draw the reasonable inference that the defendant is liable for the misconduct alleged."

24   <u>Iqbal</u>, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the

25   court to infer more than the mere possibility of misconduct, the complaint has alleged – but

26   it has not 'show[n]' – 'that the pleader is entitled to relief.'" <u>Id.</u> at 679.  In the event

27   dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

28

6

United States District Court

For the Northern District of California

1    cannot be saved by any amendment.  See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir.

2    2005).

3         "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint,

4    however inartfully pleaded, must be held to less stringent standards than formal pleadings

5    drafted by lawyers.'"  Erikson, 551 U.S at 94 (quoting Estelle v. Gamble, 429 U.S. 97, 106

6    (1976)).  Nevertheless, in giving liberal construction to a pro se civil rights complaint courts

7    may not "supply essential elements of claims that were not initially pled."  Chapman v. Pier

8    1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (quoting Pena v. Gardner, 976 F.2d

9    469, 471 (9th Cir.1992)).  "The plaintiff must allege with at least some degree of

10   particularity overt acts which defendants engaged in that support the plaintiff's claim."

11   Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotations

12   omitted).

13        In dismissing a complaint, leave to amend must be granted unless it is clear that the

14   complaint's deficiencies cannot be cured by amendment.  See Flowers v. First Hawaiian

15   Bank, 295 F.3d 966, 976 (9th Cir. 2002) (citing Lucas v. Dep't of Corporations, 66 F.3d

16   245, 248 (9th Cir. 1995)).  When amendment would be futile, however, dismissal may be

17   ordered with prejudice.  Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996); see also

18   Felton v. Hoover, 56 F.App'x 837, 840 (9th Cir. 2003).

19        2.    California Tort Claims Act

20        Under the California Tort Claims Act (CTCA), "a plaintiff may not maintain an action

21   for damages against a public entity unless a written claim has first been presented to the

22   appropriate entity and has been acted upon by that entity before filing suit in court."

23   Butler v. Los Angeles Cnty., 617 F.Supp.2d 994, 1001 (C.D. Cal. 2008) (citing Cal. Gov't

24   Code §§ 905, 945.4, 950.2).  See also Mangold v. California Pub. Utilis. Comm'n., 67 F.3d

25   1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires, as a condition

26   precedent to suit against a public entity, the timely presentation of a written claim and the

27   rejection of the claim in whole or in part.").  Claims for personal injury and property

28

United States District Court

For the Northern District of California

1    damages must be presented within six months after accrual.  Cal. Gov't Code § 911.2(a);

2    City of Stockton v. Superior Court, 42 Cal.4th 730, 738 (2007).  "The CTCA applies to state

3    law claims wherever those claims are brought, and the requirement that a plaintiff must

4    affirmatively allege compliance with the CTCA applies in federal court."  Butler, 617

5    F.Supp.2d at 1001 (citing Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 627

6    (9th Cir. 1988)).  "'Complaints that do not allege facts demonstrating either that a [tort]

7    claim was timely presented or that compliance with the claims statute is excused are

8    subject to [dismissal].'"  Id. (quoting Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 209

9    (2007)); see also State of California v. Superior Court (Bodde), 32 Cal.4th 1234, 1243

10   (2004) (stating that plaintiff must allege facts "demonstrating or excusing compliance with

11   the claim presentation requirement").

12   B.      Grounds for Dismissal of Plaintiff's Claims

13          After the court dismissed with prejudice all claims against the Parkmerced

14   defendants on June 28, 2013, all that survives are plaintiff's allegations against the City

15   defendants relating to her various interactions with City agencies and officials, namely

16   Gavin's request for a blue zone parking spot, her participation in meetings and requests for

17   assistance from several San Francisco agencies, the Sheriff's allegedly wrongful eviction of

18   plaintiff, and her unsuccessful race for City District Supervisor (i.e., categories (2) and (3)

19   above).

20          1.      Dismissal of Federal Claims Pursuant to Rule 12(b)(6)

21          Plaintiff's ninth and tenth causes of action are for civil RICO and deprivation of civil

22   rights, respectively.  The elements of a civil RICO claim are: "(1) conduct (2) of an

23   enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts)

24   (5) causing injury to plaintiff's business or property."  Living Designs, Inc. v. E.I. Dupont de

25   Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (quoting Grimmett v. Brown, 75 F.3d

26   506, 510 (9th Cir.1996)); see 18 U.S.C. §§ 1964(c), 1962(c).  See also

27   Swartz v. KPMG LLP, 476 F.3d 756, 760–61 (9th Cir. 2007) ("A civil RICO claim requires

28

8

United States District Court

For the Northern District of California

1  allegations of the conduct of an enterprise through a pattern of racketeering activity that

2  proximately caused injury to the plaintiff.").  The court reviews plaintiff's civil rights

3  deprivation claim under 42 U.S.C. § 1983.  See Anderson v. Warner, 451 F.3d 1063, 1067

4  (9th Cir. 2006) (stating that § 1983 is "a vehicle by which plaintiffs can bring federal

5  constitutional and statutory challenges to actions by state and local officials") (citation and

6  internal quotation mark omitted).[3]  In order to hold a public entity liable under § 1983, a

7  plaintiff must show "(1) that [she] possessed a constitutional right of which [she] was

8  deprived; (2) that the [public entity] had a policy; (3) that the policy amounts to deliberate

9  indifference to [plaintiff's] constitutional right; and (4) that the policy is the moving force

10  behind the constitutional violation."  Anderson, 451 F.3d at 1070 (quoting Oviatt v. Pearce,

11  954 F.2d 1470, 1474 (9th Cir. 1992)) (internal quotations omitted).

12      Here, the court finds that even under the more relaxed pro se pleading standard,

13  plaintiff has failed to state a claim upon which relief can be granted.  To support her civil

14  RICO claim, plaintiff re-alleges all of the factual allegations in her complaint, and does not

15  offer any specificity as to the wrongful conduct or injury to business or property she

16  suffered.  Instead, she merely asserts that the defendants in this action have formed an

17  enterprise, and that by their unspecified wrongful conduct have "wrongfully committed civil

18  conspiracy in violation of Civil R.I.C.O. thereby causing Plaintiff Gavin to incur damages."

19  Complaint, ¶ 293.  The court finds that these allegations fail to provide a factual basis for

20  plaintiff's claim and constitute mere conclusions, and thus fall far short of plausibly stating a

21  claim that would entitle plaintiff to relief.  Accordingly, plaintiff's ninth cause of action is

22  DISMISSED.

23      In regards to her deprivation of civil rights claim, plaintiff contends that the City

24

25  _____

        [3] The court analyzes plaintiff's deprivation of civil rights claim in regards to the public
26  entities, and not the individuals charged in the action, because Gavin has not alleged any
    individual conduct by the City officials.  Anderson, 451 F.3d at 1067 ("To state a claim under
27  § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal
    Constitution or statutory law, and (2) allege that the deprivation was committed by a person
28  acting under color of state law.") (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

United States District Court

For the Northern District of California

1   defendants deprived her of her right to vote and somehow violated the principle of "one

2   person; one vote."  Complaint, ¶¶ 132-35.  Her central allegations in support of this claim

3   are that she "does not know what occurred to the vote she cast for herself" and that

4   "[d]efendants may have discarded her vote or alternatively diluted her vote."  Id., ¶¶ 130-31.

5    Plaintiff bases her suspicions on the alleged occurrence of a power outage and a false

6   alarm during the vote counting.  Id., ¶ 128.  However, nowhere in the complaint does

7   plaintiff identify any wrongdoing by the City or its agencies, or allege the existence of a

8   policy which amounts to the deliberate indifference to Gavin's right to vote, or that such a

9   policy is the moving force behind the alleged constitutional violation.  See Anderson, 451

10  F.3d at 1070.  Thus, plaintiff has not pled any facts that, even liberally construed, plausibly

11  establish the essential elements of her claim, and the court may not supply them for her.

12  See Pena, 976 F.2d at 471.  Moreover, the court is not at all persuaded by plaintiff's

13  assertion that the three-vote discrepancy in the election reports is a basis for relief.  As the

14  court previously noted when it denied plaintiff's TRO request, a variance of three votes is

15  negligible in an election where over 35,000 votes were cast.  See Dkt. 11 at 2.  This is

16  especially true in ranked-choice elections, where ballots are redistributed repeatedly among

17  candidates according to voter preference, until a candidate wins over fifty percent of the

18  votes.  As such, the court finds that plaintiff's factual allegations are insufficient to sustain

19  her deprivation of voting rights claim, and plaintiff's tenth cause of action is DISMISSED.

20      Plaintiff's first cause of action (declaratory relief) and second cause of action

21  (injunctive relief) may also be construed as federal claims, but they are derivative of the

22  underlying RICO and civil rights claims.  Accordingly, plaintiff's first and second causes of

23  action are DISMISSED for the reasons described above.

24      As plaintiff did not file an opposition to the motion to dismiss and has failed to take

25  advantage of multiple opportunities to present additional facts to the court, it appears that

26  plaintiff cannot substantiate her claims in such a way as to show that she is entitled to

27  relief.  Accordingly, the dismissal of plaintiff's federal claims (civil RICO, deprivation of civil

28

United States District Court

For the Northern District of California

1    rights, declaratory and injunctive relief) shall be with prejudice.

2         2.        Dismissal of State Law Claims for Failure to Comply with the CTCA

3         Plaintiff's remaining causes of action against the City defendants (i.e., fraud,

4    negligence, defamation of character, false claims, nuisance, unconscionability, accounting

5    and interpleader) are California state law claims against public entities and officials.  As

6    such, the City defendants argue, these claims must be dismissed because "[n]owhere in

7    her complaint in this action does Gavin allege that she complied" with the presentation

8    requirements of Cal. Gov. Code §§ 945.4, 950.2.  Defs.' Mot. Dismiss at 7-8.

9         The court agrees with the City defendants on this point.  Plaintiff's claims are subject

10   to dismissal because she has not alleged the requisite compliance with the CTCA, as she

11   has neither asserted that a timely claim was presented and rejected, nor stated any reason

12   why compliance would be excused.  See Shirk, 42 Cal.4th at 209; Bodde, 32 Cal.4th at

13   1243.  Moreover, plaintiff has had numerous opportunities to allege facts demonstrating or

14   excusing compliance with the CTCA, and has failed to do so.  Plaintiff did not file an

15   opposition to the City defendants' motion, and failed to appear at both the June 27, 2013

16   order to show cause hearing and the July 24, 2013 motion to dismiss hearing.  Accordingly,

17   plaintiff's state law claims against the City defendants are DISMISSED.  Because plaintiff

18   has had numerous opportunities to allege compliance with the CTCA, but has not done so,

19   the dismissal shall be with prejudice.

20                              **CONCLUSION**

21        For the foregoing reasons, the City defendants' motion to dismiss is GRANTED and

22   all claims against the City defendants are DISMISSED with prejudice.

23        **IT IS SO ORDERED.**

24   Dated: August 30, 2013

25                                                      _____
                                                       PHYLLIS J. HAMILTON
26                                                     United States District Judge

27

28

                                          11