UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LYNN GAVIN,

    Plaintiff,

    v.

JOHN ARNTZ, et al.

    Defendants.

_____/

No. C 13-0056 PJH

**ORDER GRANTING MOTION TO DISMISS**

The motion of defendants City and County of San Francisco, its Board of Supervisors, former Supervisor Sean Elsbernd, the Office of the Mayor of San Francisco, Mayor Edwin Mah Lee, the San Francisco Department of Elections, Elections Commission and the Director of Elections John Arntz (together "City defendants") to dismiss plaintiff Lynn Gavin's ("Gavin") claims against them came on for hearing before this court on July 24, 2013. The City defendants appeared through their counsel Wayne Snodgrass. Plaintiff, who is proceeding in pro per, did not appear at the hearing. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the City defendants' motion to dismiss as follows.

**BACKGROUND**

On January 4, 2013, plaintiff filed a complaint in this court, asserting twelve causes of action against the City defendants, as well as against Parkmerced Investors Properties, LLC ("Parkmerced"), Seth Mallen and Bert Polacci (together "Parkmerced defendants"). Plaintiff's claims are for (1) declaratory relief, (2) injunctive relief, (3) fraud, (4) negligence, (5) defamation of character, (6) false claims, (7) nuisance, (8) unconscionability, (9) civil R.I.C.O., (10) deprivation of civil rights, (11) accounting and (12) interpleader.

A.  Factual Background

Plaintiff's complaint is not clear as to the exact conduct that supports each cause of action. Nor does plaintiff attribute any of the alleged wrongful acts or omissions to specific defendants. However, the allegations seem to separate into three major categories: (1) events related to the denial of plaintiff's request for disability accommodations at her residence and subsequent unlawful detainer case, which pertain to the Parkmerced defendants; (2) conduct by various San Francisco officials and agencies, including the San Francisco Municipal Transportation Agency's ("SFMTA") denial of plaintiff's request for a handicapped parking space designation near her home and the San Francisco Sheriff's eviction of plaintiff; and (3) allegations against the City and its election officials concerning plaintiff's unsuccessful race for Supervisor in San Francisco's District 7.

Starting with category (1), on March 1, 2010, plaintiff entered into a lease with Parkmerced. Complaint, ¶ 7. Plaintiff alleges that sometime during the lease term, prompted by her medical condition, she requested that Parkmerced install grab bars in her bathroom, a reasonable accommodation that Parkmerced refused to make. Id., ¶ 32. Plaintiff asserts that this refusal constitutes discrimination against her as a person with disabilities. Id., ¶ 33. On August 24, 2011, and again on September 19, 2011, plaintiff received three-day notices to perform covenant or quit for non-payment of utilities, which she insists were "fraudulently issued" in retaliation against her, because she "is a disabled person who asserts her rights." Id., ¶¶ 68-70, 74. Eventually, Parkmerced filed an unlawful detainer claim in San Francisco Superior Court, and on July 2, 2012, obtained a default judgment against plaintiff. Id., ¶ 99. On July 10, 2012, plaintiff filed an ex parte request to set aside the default judgment, which the court denied on July 17, 2012, only staying the judgment until July 25, 2012. Id., ¶ 110. Plaintiff alleges that the Superior Court's ruling was "wrongful" and that it violates her right to a jury trial. Id., ¶ 111. On July 25, 2012, plaintiff was evicted by the San Francisco Sheriff's Department. Id., ¶ 118.

As to category (2), plaintiff also had interactions with several San Francisco

1 agencies during the course of the above-mentioned events.  Plaintiff alleges that she
2 contacted the SFMTA, requesting the designation of a handicapped parking spot near her
3 home, but that the agency denied her request via a letter sent on August 18, 2011.  Id., ¶¶
4 62-63.  Plaintiff also mentions several hearings and findings of the Sunshine Task Force
5 between August 2011 and April 2012, but does not elaborate about the nature or subject
6 matter of these events.  Id., ¶¶ 64-66, 73, 76, 85.  Plaintiff alleges that she filed complaints
7 against several City Supervisors, the City Attorney and various other officials, and that the
8 Sunshine Task Force held hearings and made findings, but offers no specifics.  Id.
9 Additionally, plaintiff represents that she received a verification from the San Francisco
10 Human Rights Commission ("SFHRC") that she has an "open complaint against
11 [d]efendants," but does not describe the basis for the complaint.  Id., ¶ 105.  Plaintiff also
12 alleges that another city agency, the San Francisco Housing Authority ("SFHA"), has on
13 record plaintiff's statement to the SFHA inspector that Parkmerced "would not pay for grab
14 bars."  Id., ¶ 83.

15      Turning to category (3), on August 10, 2012, plaintiff declared her candidacy for
16 District 7 Supervisor on the San Francisco Board of Supervisors.  Id. ¶ 123.  Plaintiff voted
17 for herself in the November 6, 2012 election.  Id., ¶¶ 125-26.  Plaintiff alleges that during
18 the vote counting on November 7, 2013, there was a power outage at the San Francisco
19 City Hall, and that a "false fire alarm" was triggered.  Id., ¶ 128.  Plaintiff asserts that she
20 "does not know what occurred to the vote she cast for herself in the [e]lection after she cast
21 her vote."  Id., ¶ 130.  Norman Yee was declared the winner of the District 7 Supervisor
22 seat, while plaintiff placed eighth out of nine candidates.  Id. ¶ 136; Id. Ex. 2.
23 Subsequently, plaintiff obtained three election reports: (1) the Final Certified Summary
24 Report issued by the City Department of Elections, which indicates that plaintiff received
25 716 votes out of 31,334; (2) a tally published on the website westideobserver.com, showing
26 that she received 719 out of 31,385 votes; and (3) a report posted on the website
27 wikipedia.org, which states that plaintiff won 716 of the 31,351 total votes, and 719 "ranked-
28

3

choice" votes.[1]  Id. ¶¶ 136-40; see also id. Ex. 3; id. Ex. 4.  Plaintiff asserts that she was deprived of her right to vote, as well as of the right to have her vote "counted equally with the vote of any other person who voted in the election," because she does not know what happened to the vote she cast, and because "[d]efendants may have discarded" her vote, "thereby minimizing or potentially canceling out her ability to elect herself in the [e]lection." Id., ¶¶ 130-34.  Although it is not entirely clear in the complaint, these allegations seem to be proffered as support for plaintiff's deprivation of civil rights claim against the City defendants.

B.  Procedural Background

Along with her complaint, on January 4, 2013, plaintiff filed an application to proceed in forma pauperis ("IFP") and an application for a temporary restraining order ("TRO") enjoining the swearing in of Norman Yee as the representative of District 7 on the San Francisco Board of Supervisors.  Dkt. 3.  Plaintiff's IFP application was granted on January 7, 2013.  Dkt. 5.  The court held a hearing on the TRO application on January 8, 2013, and the request was denied, based on the lack of factual allegations supporting plaintiff's claims.  Dkt. 11.  The court then scheduled a case management conference ("CMC"), which was continued at plaintiff's request to May 30, 2013.  Plaintiff did not file a case management statement, and did not appear at the CMC.  However, counsel for the Parkmerced defendants did appear, and informed the court that plaintiff's complaint in this case may be duplicative of a previous action filed by plaintiff in this court.  See Gavin v. Parkmerced, No. 12-5864 RS (N.D. Cal. 2013) (filed Nov. 25, 2012; and dismissed Apr. 29, 2013).  Accordingly, the court ordered plaintiff to show cause why the case should

---

[1] Ranked-choice voting, which allows voters to rank up to three candidates for a single office, is used to elect the City's Board of Supervisors. Ballots are initially distributed based on each elector's first preference. If a candidate secures more than half of votes cast, that candidate wins. Otherwise, the candidate with the fewest votes is eliminated, and the votes in his or her favor are recounted and assigned to the remaining candidates based on the voter's next preference. This process continues until one candidate wins by obtaining more than half the votes. City and County of San Francisco Department of Elections, http://www.sfgov2.org/index.aspx?page=876 (last visited July 18, 2013).

not be dismissed for failure to prosecute pursuant to Fed. R. Civ. P. 41, and to show that the instant case involves issues that were not already litigated in her previous suit against the Parkmerced defendants. Dkt. 17. A hearing on the matter was scheduled for June 27, 2013. Plaintiff also filed a motion to change venue to San Francisco, which the court decided to include as part of the June 27 hearing.

On June 24, 2013, the Parkmerced defendants filed a response to the order to show cause ("OSC"), explaining that the current claims against them (i.e., the claims arising out of category (1) above) are identical to the ones previously dismissed with prejudice by the Hon. Richard Seeborg in Gavin v. Parkmerced. Plaintiff did not file a response to the Parkmerced defendants' OSC response, and did not appear at the June 27, 2013 hearing as ordered. After the hearing, the court agreed with the Parkmerced defendants that plaintiff's claims against them are barred as duplicative, and dismissed with prejudice all claims pertaining to the Parkmerced defendants. Dkt. 30. Because plaintiff did not appear at the hearing, the court also denied her motion for change of venue. Id. Additionally, the court noted in a written order that the City defendants had filed the instant motion to dismiss for (1) failure to state a claim, and (2) failure to comply with the California Tort Claims Act[2], and that a hearing on that motion would be held on July 24, 2013. The court stated that plaintiff's appearance at the July 24 hearing was mandatory, and that plaintiff's non-compliance with the order would constitute grounds for dismissal for failure to prosecute.

Plaintiff did not file an opposition to the City defendants' motion to dismiss. Plaintiff also did not appear at the hearing scheduled for 9:00am on July 24, 2013, despite the court's warning that her non-appearance would warrant dismissal for failure to prosecute. Instead, at 11:43 am on July 24, 2013, Gavin filed a request with the San Francisco clerk's office to continue the hearing to August 8, 2013.

---

[2] The California Tort Claims Act is referred to as the California Government Claims Act in the City defendants' motion to dismiss.

## DISCUSSION

A. Legal Standards

    1. Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

cannot be saved by any amendment.  See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  Erikson, 551 U.S at 94 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Nevertheless, in giving liberal construction to a pro se civil rights complaint courts may not "supply essential elements of claims that were not initially pled."  Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir.1992)).  "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim."  Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotations omitted).

In dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.  See Flowers v. First Hawaiian Bank, 295 F.3d 966, 976 (9th Cir. 2002) (citing Lucas v. Dep't of Corporations, 66 F.3d 245, 248 (9th Cir. 1995)).  When amendment would be futile, however, dismissal may be ordered with prejudice.  Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996); see also Felton v. Hoover, 56 F.App'x 837, 840 (9th Cir. 2003).

2.      California Tort Claims Act

Under the California Tort Claims Act (CTCA), "a plaintiff may not maintain an action for damages against a public entity unless a written claim has first been presented to the appropriate entity and has been acted upon by that entity before filing suit in court."  Butler v. Los Angeles Cnty., 617 F.Supp.2d 994, 1001 (C.D. Cal. 2008) (citing Cal. Gov't Code §§ 905, 945.4, 950.2).  See also Mangold v. California Pub. Utilis. Comm'n., 67 F.3d 1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part.").  Claims for personal injury and property

damages must be presented within six months after accrual. Cal. Gov't Code § 911.2(a); City of Stockton v. Superior Court, 42 Cal.4th 730, 738 (2007). "The CTCA applies to state law claims wherever those claims are brought, and the requirement that a plaintiff must affirmatively allege compliance with the CTCA applies in federal court." Butler, 617 F.Supp.2d at 1001 (citing Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 627 (9th Cir. 1988)). "'Complaints that do not allege facts demonstrating either that a [tort] claim was timely presented or that compliance with the claims statute is excused are subject to [dismissal].'" Id. (quoting Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 209 (2007)); see also State of California v. Superior Court (Bodde), 32 Cal.4th 1234, 1243 (2004) (stating that plaintiff must allege facts "demonstrating or excusing compliance with the claim presentation requirement").

B.      Grounds for Dismissal of Plaintiff's Claims

After the court dismissed with prejudice all claims against the Parkmerced defendants on June 28, 2013, all that survives are plaintiff's allegations against the City defendants relating to her various interactions with City agencies and officials, namely Gavin's request for a blue zone parking spot, her participation in meetings and requests for assistance from several San Francisco agencies, the Sheriff's allegedly wrongful eviction of plaintiff, and her unsuccessful race for City District Supervisor (i.e., categories (2) and (3) above).

1.      Dismissal of Federal Claims Pursuant to Rule 12(b)(6)

Plaintiff's ninth and tenth causes of action are for civil RICO and deprivation of civil rights, respectively. The elements of a civil RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (quoting Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir.1996)); see 18 U.S.C. §§ 1964(c), 1962(c). See also Swartz v. KPMG LLP, 476 F.3d 756, 760–61 (9th Cir. 2007) ("A civil RICO claim requires

8

allegations of the conduct of an enterprise through a pattern of racketeering activity that proximately caused injury to the plaintiff."). The court reviews plaintiff's civil rights deprivation claim under 42 U.S.C. § 1983. See Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006) (stating that § 1983 is "a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials") (citation and internal quotation mark omitted).[3] In order to hold a public entity liable under § 1983, a plaintiff must show "(1) that [she] possessed a constitutional right of which [she] was deprived; (2) that the [public entity] had a policy; (3) that the policy amounts to deliberate indifference to [plaintiff's] constitutional right; and (4) that the policy is the moving force behind the constitutional violation." Anderson, 451 F.3d at 1070 (quoting Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992)) (internal quotations omitted).

Here, the court finds that even under the more relaxed pro se pleading standard, plaintiff has failed to state a claim upon which relief can be granted. To support her civil RICO claim, plaintiff re-alleges all of the factual allegations in her complaint, and does not offer any specificity as to the wrongful conduct or injury to business or property she suffered. Instead, she merely asserts that the defendants in this action have formed an enterprise, and that by their unspecified wrongful conduct have "wrongfully committed civil conspiracy in violation of Civil R.I.C.O. thereby causing Plaintiff Gavin to incur damages." Complaint, ¶ 293. The court finds that these allegations fail to provide a factual basis for plaintiff's claim and constitute mere conclusions, and thus fall far short of plausibly stating a claim that would entitle plaintiff to relief. Accordingly, plaintiff's ninth cause of action is DISMISSED.

In regards to her deprivation of civil rights claim, plaintiff contends that the City

---

[3] The court analyzes plaintiff's deprivation of civil rights claim in regards to the public entities, and not the individuals charged in the action, because Gavin has not alleged any individual conduct by the City officials. Anderson, 451 F.3d at 1067 ("To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law.") (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

9

defendants deprived her of her right to vote and somehow violated the principle of "one person; one vote." Complaint, ¶¶ 132-35. Her central allegations in support of this claim are that she "does not know what occurred to the vote she cast for herself" and that "[d]efendants may have discarded her vote or alternatively diluted her vote." Id., ¶¶ 130-31. Plaintiff bases her suspicions on the alleged occurrence of a power outage and a false alarm during the vote counting. Id., ¶ 128. However, nowhere in the complaint does plaintiff identify any wrongdoing by the City or its agencies, or allege the existence of a policy which amounts to the deliberate indifference to Gavin's right to vote, or that such a policy is the moving force behind the alleged constitutional violation. See Anderson, 451 F.3d at 1070. Thus, plaintiff has not pled any facts that, even liberally construed, plausibly establish the essential elements of her claim, and the court may not supply them for her. See Pena, 976 F.2d at 471. Moreover, the court is not at all persuaded by plaintiff's assertion that the three-vote discrepancy in the election reports is a basis for relief. As the court previously noted when it denied plaintiff's TRO request, a variance of three votes is negligible in an election where over 35,000 votes were cast. See Dkt. 11 at 2. This is especially true in ranked-choice elections, where ballots are redistributed repeatedly among candidates according to voter preference, until a candidate wins over fifty percent of the votes. As such, the court finds that plaintiff's factual allegations are insufficient to sustain her deprivation of voting rights claim, and plaintiff's tenth cause of action is DISMISSED.

Plaintiff's first cause of action (declaratory relief) and second cause of action (injunctive relief) may also be construed as federal claims, but they are derivative of the underlying RICO and civil rights claims. Accordingly, plaintiff's first and second causes of action are DISMISSED for the reasons described above.

As plaintiff did not file an opposition to the motion to dismiss and has failed to take advantage of multiple opportunities to present additional facts to the court, it appears that plaintiff cannot substantiate her claims in such a way as to show that she is entitled to relief. Accordingly, the dismissal of plaintiff's federal claims (civil RICO, deprivation of civil

10

1 rights, declaratory and injunctive relief) shall be with prejudice.

2       2.       Dismissal of State Law Claims for Failure to Comply with the CTCA

Plaintiff's remaining causes of action against the City defendants (i.e., fraud, negligence, defamation of character, false claims, nuisance, unconscionability, accounting and interpleader) are California state law claims against public entities and officials. As such, the City defendants argue, these claims must be dismissed because "[n]owhere in her complaint in this action does Gavin allege that she complied" with the presentation requirements of Cal. Gov. Code §§ 945.4, 950.2. Defs.' Mot. Dismiss at 7-8.

The court agrees with the City defendants on this point. Plaintiff's claims are subject to dismissal because she has not alleged the requisite compliance with the CTCA, as she has neither asserted that a timely claim was presented and rejected, nor stated any reason why compliance would be excused. See Shirk, 42 Cal.4th at 209; Bodde, 32 Cal.4th at 1243. Moreover, plaintiff has had numerous opportunities to allege facts demonstrating or excusing compliance with the CTCA, and has failed to do so. Plaintiff did not file an opposition to the City defendants' motion, and failed to appear at both the June 27, 2013 order to show cause hearing and the July 24, 2013 motion to dismiss hearing. Accordingly, plaintiff's state law claims against the City defendants are DISMISSED. Because plaintiff has had numerous opportunities to allege compliance with the CTCA, but has not done so, the dismissal shall be with prejudice.

## CONCLUSION

For the foregoing reasons, the City defendants' motion to dismiss is GRANTED and all claims against the City defendants are DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: August 30, 2013

PHYLLIS J. HAMILTON
United States District Judge